Case 5:18-cr-00055   Document 57   Filed on 07/07/20 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
July 07, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| VS. | § § | CRIMINAL ACTION NO. 5:18-CR-55 |
| JUAN ANTONIO REYES-DE LA ROSA | § | |

## MEMORANDUM & OPINION

Defendant Juan Antonio Reyes-De La Rosa is a Mexican national currently serving a 46-month sentence at Federal Correctional Institution, Oakdale I (FCI Oakdale) in Louisiana after he pleaded guilty to illegal re-entry into the United States. (Dkt. 37 at 1–2.) On May 18, 2020, Defendant filed a motion (Dkt. 52) requesting immediate release from the custody of the Federal Bureau of Prisons (BOP) so that he may return to Mexico. (*Id.* at 1-2.) Although Defendant cites to the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2) (2020), as the basis for his requested relief, his motion is properly construed as a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

The Government does not oppose Defendant's request given the extraordinary and compelling reasons that warrant his early release, including his health conditions, the unavailability of home confinement for Defendant, and the nonviolent nature of his underlying offense. (Dkt. 56 at 1.) Although the Government notes that "the transfer process to ICE custody is uncertain" and Defendant's "deportation may be delayed," the Government requests that Defendant's motion be granted. (*Id.* at 5.) Having fully considered the applicable law and Parties' positions, the Court finds that Defendant's motion should be granted.

### Background

On December 23, 2017, Defendant was arrested in Laredo, Texas, for illegal re-entry in

violation of 8 U.S.C. § 1326. (Dkt. 9 at 1; *see* Dkt. 16 at 1.) A federal grand jury returned an indictment (Dkt. 16) against Defendant, and he later pleaded guilty to the charge. (*See* Minute Entry of Mar. 14, 2018.) On May 30, 2018, the Court sentence him to 46 months' imprisonment followed by 3 years of supervised release. (Dkt. 37 at 2–3.) Defendant has now served 37 months of his sentence and is scheduled to be released on March 30, 2021.[1] (Dkt. 56 at 2.)

After filing the pending motion (Dkt. 52), Defendant wrote to BOP on May 27, 2020 to request "consideration for early release based on purported health risks." (Dkt. 56 at 2; *see* Dkt. 55, Attach. 1.) Although Defendant had not received a response from BOP at the time Government filed its amended response on June 26, 2020, the Government has been informed by BOP counsel that Defendant's request has been considered and will be denied. (*Id.* at 2 n.2.)

As of July 6, 2020, there are one inmate and four staff active cases of COVID-19 at FCI Oakdale. *See COVID-19: Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited July 6, 2020). Since the start of the pandemic, FCI Oakdale has reported that over 200 inmates have tested positive for COVID-19 and seven inmates have died. *Id.* On June 9, 2020, Defendant was tested for COVID-19, and his results were negative. (Dkt. 56 at 2; Dkt. 56, Attach. 2 at 1.) He was quarantined for at least 14 days without fever or other symptoms of COVID-19. (*Id.*)

Although Defendant reported that he was "in good health with no history of health problems" at the time of his sentencing (Dkt. 29 at 15), he was diagnosed with hepatitis C in 2018 after arriving at FCI Oakdale. (Dkt. 56 at 4; *see* Dkt. 55, Attach 3.) Defendant's medical records confirm that he has chronic hepatitis C and high cholesterol. (*See* Dkt. 52 at 1; Dkt. 55, Attachs. 2–3; Dkt. 56 at 4.)

---

[1] Defendant's March 30, 2020 scheduled release date accounts for a sentencing reduction received for good behavior and credit for time served. (Dkt. 56 at 2.)

**Legal Standard**

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, under 18 U.S.C. § 3582(c)(1)(A), courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant [release]," or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Director of BOP could move a district court under 18 U.S.C. § 3582(c)(1)(A) for the compassionate release of a federal prisoner. The First Step Act of 2018 (FSA) amended § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. *See* First Step Act of 2018, Section 603(b), Pub. L. 115-391, 132 Stat. 5194 (2018). Section 3582(c)(1)(A) now authorizes a district court to reduce a defendant's sentence either (1) upon motion by the Director of BOP or (2) upon motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Where this exhaustion requirement is met and a defendant is seeking a sentence reduction under § 3582(c)(1)(A)(i), a court may grant the motion if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). In addition, a court must consider the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable. *Id.*

The Sentencing Commission's current policy statement sets forth the following

circumstances that are considered "extraordinary and compelling reasons": medical condition of the defendant, age of the defendant, family circumstances, and other reasons as determined by the director of BOP.[2] U.S.S.G. § 1B1.13, comment n.1. Even if "extraordinary and compelling reasons" for early release exist, the policy statement authorizes a reduction in sentence only if a defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

## Discussion

**B.     Extraordinary and Compelling Reasons Warrant Compassionate Release**

Because the Government concedes that Defendant has exhausted his administrative remedies (*see* Dkt. 56 at 2 n.2), the Court addresses whether extraordinary and compelling reasons exist for compassionate release. In his motion, Defendant argues that his release is warranted because FCI Oakdale "was the epicenter of this [COVID-19] pandemic in the [BOP]" and Defendant has been "diagnosed with hepatitis-C and high cholesterol." (Dkt. 52 at 1.) Defendant wishes to return to his home in Mexico so that he can help support his wife and children, two of whom have special needs. (*Id.*; *see* Dkt. 29 at 14.)

Although the existence of the COVID-19 pandemic alone does not warrant compassionate release, the Court finds that additional circumstances support Defendant's request. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot

---

[2] Because the policy statement had not been updated or revised since the FSA was passed in 2018, courts disagree about the extent to which the policy statement is valid. *See United States v. Gamble*, 2020 WL 1955338, at *2 (D. Conn. Apr. 23, 2020) (recognizing that the United States Sentencing Commission guidance "has not yet been updated to reflect the liberalization of the procedural requirements"); *United States v. Cantu*, 423 F. Supp. 3d 345, 347–48 (S.D. Tex. 2019) (Garcia Marmolejo, J.) (noting that "some of [policy statement] now clearly contradicts 18 U.S.C. § 3582(c)(1)(A)").

independently justify compassionate release."). First, there is no dispute that Defendant suffers from a serious medical condition, hepatitis C, which increases his risk for severe illness from COVID-19. (Dkt. 52 at 1; Dkt. 56 at 3–4.) *See People Who Are at Increased Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited July 6, 2020). The Government also notes that Defendant's cholesterol levels have increased during his period of incarceration. (Dkt. 56 at 4.)

Second, Defendant's proposed alternative to serving his sentence in BOP custody (i.e., deportation to Mexico) is viable and unopposed by the Government. (*See id.* at 4–5.) Had it not been for his undocumented status, Defendant would likely have been eligible for home confinement.[3] (*See id.* at 1 (noting that Defendant is ineligible because he is a foreign national

---

[3] In a March 26, 2020 Memorandum, Attorney General William Barr directed the BOP Director to "prioritize the use of . . . various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." William Barr, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (Mar. 26, 2020). In assessing which inmates should be granted home confinement, BOP considers the "totality of circumstances for each individual inmate" as well as several discretionary factors, such as an inmate's age and vulnerability to COVID-19, security level of the facility where the inmate is housed, the inmate's conduct in prison, and the inmate's crime of conviction. *Id.* Attorney General Barr issued a second Memorandum on April 3, 2020, directing the BOP Director to review all inmates with COVID-19 risk factors, "starting with inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similar situated facilities where . . . COVID-19 is materially affecting operations." William Barr, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*, https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf (Apr. 3, 2020).

Here, Defendant has demonstrated vulnerability to COVID-19 due to his medical conditions. (*See* Dkt. 52 at 1; Dkt. 56 at 3–4.) Defendant is currently housed at FCI Oakdale, a low security prison and one of the facilities named in the Attorney General's April 3, 2020 Memorandum. Defendant's crime of illegal re-entry was nonviolent and victimless. The Government does not claim that Defendant's conduct in prison has been violent, nor is there evidence suggesting that Defendant is danger to the community. To the contrary, the Government notes that Defendant has received a sentencing reduction for good behavior. (*See*

without ties to the United States).) As the Government correctly notes, however, "nothing in the CARES Act provides for the relief [Defendant] now seeks—early termination of his custodial sentence and release to an ICE facility pending his removal to a foreign country." (Dkt. 56 at 3.) *See* CARES Act, Section 12003(b)(2) (temporarily expanding BOP's existing authority under § 3624(c)(2) to designate prisoners to home confinement). Thus, compassionate release is the appropriate vehicle for relief here. In light of the ongoing pandemic and BOP's interest in reducing its inmate population, the Court finds that Defendant's particularized showing of risk and his pending deportation constitute extraordinary and compelling reasons for his release. *See United States v. Cantu*, 423 F. Supp. 3d 345, 347–48 (S.D. Tex. 2019) (Garcia Marmolejo, J.) (holding that a court "can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief").

Finally, the Court finds that Defendant "is not a danger to the safety of any other person or the community." *See* U.S.S.G. § 1B1.13, comment n.1. Other than his convictions for illegal entry and re-entry, Defendant was convicted of misdemeanor assault in 2001 and of two drug-related felonies in 2004 and 2005. (*See* Dkt. 29 at 8–11.) Defendant's assault conviction is now almost twenty years old, and nothing else in the record suggests that Defendant presents a threat to others or the community. His present conviction for illegal re-entry was a nonviolent and victimless crime.

**B.     Sentencing Factors in 18 U.S.C. § 3553(a) Favor Compassionate Release**

The Court finds that the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) further support Defendant's request for compassionate release. As the Government appropriately notes, Defendant was convicted of illegal re-entry—a crime that was neither violent nor involved

---

Dkt. 56 at 2, 4.)

the use of firearms. *See* 18 U.S.C. § 3553(a)(1) (requiring *inter alia* consideration of the "nature and circumstances of the offense"). His was a victimless crime with no restitution owed. (Dkt. 56 at 4.) Defendant's 46-month sentence reflects the seriousness of his offense, including his repeated illegal re-entries. (*Id.*; *see* Minute Entry of May 30, 2018.) Defendant, who is now a unit orderly, has served the eighty percent of his sentence and is due for release in nine months. (Dkt. 56 at 4.)

Other courts have granted compassionate release to undocumented defendants under similar circumstances. *See, e.g., United States v. Morrison*, 2020 WL 3447757, at *6 (D. Md. June 24, 2020) (reducing a defendant's sentence to time served because he had potential prostate cancer; he was not a danger to the community; and he would be released to ICE or CBP custody after release to be deported to Jamaica); *United States v. Arreola-Bretado*, 2020 WL 2535049, at *1, 4 (S.D. Cal. May 15, 2020) (reducing a defendant's sentence to time served based on, in part, her serious medical conditions; her ineligibility for release to home confinement because she would be deported; and the fact that she has served sixty percent of her sentence); *United States v. Mel*, 2020 WL 2041674, at *2–4 (D. Md. Apr. 28, 2020) (reducing a defendant's sentence to time served because she had potential cancer for which she was not receiving necessary medical care; she was not a danger to the community; and her requested reduction in sentence was limited to two weeks).

## Conclusion

For the foregoing reasons, Defendant's motion for compassionate release (Dkt. 52) is hereby GRANTED. Because Defendant's motion is granted, his request for appointment of counsel (*see* Dkt. 52 at 1) is DENIED as MOOT.

Defendant's sentence is hereby REDUCED to time served, subject to the following

quarantine requirement. Defendant is hereby ORDERED to undergo a 14-day quarantine at BOP's discretion before any release into the custody of any other government agency, including ICE.

The Clerk of Court is hereby DIRECTED to mail Defendant a copy of this Order by any receipted means to the address indicated in his most recent filing.

IT IS SO ORDERED.

SIGNED this 7th day of July, 2020.

_____
Diana Saldaña
United States District Judge